UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

N° 08 Civ. 0252 (RJS) (FM)

---

DERRICK MORTON,

Petitioner,

VERSUS

ROBERT ERCOLE,

Respondent.

---

ORDER ADOPTING REPORT AND RECOMMENDATION
March 9, 2010

---

RICHARD J. SULLIVAN, District Judge:

Derrick Morton ("Petitioner") petitions this Court for a writ of habeas corpus ("Petition") under 28 U.S.C. § 2254, challenging the denial of his right to appeal his conviction in state court. Before the Court are Petitioner's objections to the December 31, 2009 Report and Recommendation ("Report") of the Honorable Frank Maas, Magistrate Judge, recommending that the Petition be dismissed as untimely. For the reasons set forth below, the Court concludes that Petitioner's objections are without merit and adopts Magistrate Judge Maas's Report in its entirety.

I. BACKGROUND

On December 15, 1993, Petitioner was charged with robbery in the second degree and sexual abuse in the first degree in the Supreme Court of the State of New York, Bronx County. This indictment was based on allegations that on September 9, 1993, Petitioner and two other men robbed and fondled a victim while on the elevator of her

residential building. A pre-trial *Wade* hearing[1] was conducted on May 11, 1995, at which Petitioner's motion to suppress his identification was denied. Trial began on June 19, 1995, and, two days later, Petitioner failed to appear in court. At a hearing held the next day, the court determined that Petitioner had absconded. The trial continued in Petitioner's absence, and, on June 23, 1995, Petitioner was convicted *in absentia* of two counts of sexual abuse in the first degree and one count of robbery in the second degree. Petitioner was sentenced *in absentia* on August 16, 1995 to an aggregate prison term of ten to twenty years. Petitioner remained a fugitive until March 6, 2002, when he was involuntarily returned to custody. His sentence was executed on April 29, 2002. He is currently serving this sentence at Woodburne Correctional Facility in Woodburne, New York.

Petitioner filed a *pro se* notice of appeal on May 6, 2002, an *in forma pauperis* motion on April 15, 2003, and was appointed counsel on May 15, 2003. Because the state court's trial file for Petitioner was missing, and neither trial counsel (Howard Ripps)[2] nor the prosecution could produce a copy, the Appellate Division granted Petitioner's motion for a reconstruction hearing on January 18, 2005. Prior to the reconstruction hearing, Respondent moved to dismiss the appeal on the grounds that a timely notice of appeal had not been filed. The Appellate Division denied Respondent's motion and held the reconstruction hearing on June 15, 2006 to determine the timeliness of the appeal. Petitioner's appeal was subsequently found untimely, a determination that was confirmed during a proceeding on July 6, 2006. The Appellate Division, *sua sponte*, also reversed its earlier order denying Respondent's motion to dismiss the appeal.

On November 6, 2006, Petitioner filed a writ of error *coram nobis* in the First Department alleging ineffective assistance of counsel for failure to file a timely notice of appeal. The Appellate Division denied this petition on May 1, 2007. Petitioner then sought leave to appeal to the New York Court of Appeals, which was denied on September 8, 2007.

On January 11, 2008, Petitioner filed a habeas corpus petition (the "Petition") under 28 U.S.C. § 2254 to reinstate his appeal, asserting ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. Respondent filed a motion to dismiss the Petition on March 20, 2008 because it was not filed within the period set forth in 28 U.S.C. § 2244(d)(1). The Petition was then referred to Magistrate Judge Maas, who issued his Report on December 31, 2009 and recommended that Respondent's motion be granted. Magistrate Judge Maas gave the parties fourteen days to file objections to the Report and warned that the failure to file timely objections would constitute a waiver of those objections for purposes of appeal. Petitioner timely filed objections to Magistrate Judge Maas's Report. As a result, the Court reviews the Report *de novo*. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

---

[1] A *Wade* hearing is held to determine whether a pre-trial identification of a defendant has an independent basis of reliability and is therefore admissible during trial. *United States v. Wade*, 388 U.S. 218 (1967).

[2] Ripps was suspended from practice in 1997 for neglecting client matters in violation of the ethical rules. *Matter of Ripps*, 652 N.Y.S.2d 266 (N.Y. App. Div. 1997). Petitioner's case was not involved in this disciplinary proceeding. (Pet. Mem. 15.)

## II. DISCUSSION

Petitioner objects to Magistrate Judge Maas's finding of untimeliness, arguing: (1) that the statute of limitations did not begin to run until the factual predicate for his claim could have been discovered, and it was not unreasonable for Petitioner to have waited seven years before inquiring about his appeal (Obj. 6-11); and (2) that any untimeliness should be excused under the doctrine of equitable tolling (*id.* at 6).

### A. Timeliness of the Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner filing a habeas petition faces a one-year statute of limitations period, which runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking review;
>
> . . . [or]
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner's judgment of conviction became final on September 15, 1995, thirty days after the sentence was imposed. *See* N.Y. Crim. Proc. Law § 460.10(1)(a). For judgments of conviction that became final before AEDPA's effective date of April 26, 1996, courts have afforded prisoners a one-year grace period, or until April 24, 1997, to file a first § 2254 petition or a first § 2255 motion. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998). Nevertheless, Petitioner argues that the relevant accrual date under § 2244(d)(1) for his Petition is May 6, 2002, the date on which he first contacted the Appellate Division and discovered that his appeal had not been filed. (Obj. 10.)

The Court disagrees. The relevant accrual date under § 2244(d)(1)(D) asks when Petitioner could have discovered the factual predicate of his claim through the exercise of due diligence. *See Sorce v. Artuz*, 73 F. Supp. 2d 292, 298 (E.D.N.Y. 1999). Without deciding precisely what that date is, the Court finds that it was at least several years before Petitioner filed his appeal, even after tolling the statute during the pendency of Petitioner's ineffectiveness claims in state court under § 2244(d)(2). (*See* Obj. 10-11.) Courts generally have found that periods of delay lasting for more than a year do not exhibit due diligence. *See e.g. Tineo v. United States*, No. 01 Civ. 4511 (HB), 2002 WL 1997901, at *2 (S.D.N.Y. Aug. 29, 2002) (finding that a duly diligent person would not have needed more than three years to discover that his attorney had not filed a direct appeal); *Zapata v. United States*, No. 99 Civ. 00085 (AGS), 2000 WL 1610801, at *2 (S.D.N.Y. Oct. 27, 2000) (holding that three and a half years to discover that an appeal had not been filed did not constitute due diligence); *Plowden v. Romine*, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (concluding that it was unreasonable for prisoner to allow more than seventeen months to elapse between when he sought leave to appeal and when he inquired as to the status of his leave request).

Conceding that he could have inquired about his appeal prior to May 6, 2002,

Petitioner nevertheless asserts that he was not unreasonable in failing to do so, because "the only question here should be whether the amount of time petitioner waited to contact the court was reasonable." (Obj. 10.) Petitioner argues that seven years is not an unreasonable amount of time to wait, as New York appellate courts routinely take several years to decide appeals. (*Id.* at 7-11.)

Assessing whether the length of delay is reasonable requires a determination of "when a duly diligent person in petitioner's circumstances *would have discovered* that no appeal had been filed." *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000) (emphasis added). Accordingly, the date on which Petitioner actually learned that his appeal had not been filed is immaterial. *Gonzalez-Ramos v. United States*, No. 05 Civ. 3974 (LAP), 2007 WL 1288634, at \*10 (S.D.N.Y. May 2, 2007). Instead, the running of the limitations clock is a "fact-specific issue the resolution of which depends, among other things, on the details of [petitioner's] post-sentence conversation with his lawyer and on the conditions of his confinement." *Wims*, 225 F.3d at 190-91. A petitioner may be entitled to further delay so long as he files "within one year of the date in which the discovery would have been made in the exercise of due diligence." *Id.* at 190.

Petitioner makes much of the fact that appeals routinely take several years to be decided in New York, but this assertion does not explain why it was reasonable for him to wait nearly seven years before contacting the court to inquire about the status of his appeal. During the interim, Petitioner was not hampered by the limitations of conducting legal research in a prison library. *See Gonzales-Ramos*, 2007 WL 1288634 at \*8.

Nor was he precluded from checking a publicly available docket sheet to determine if his appeal had been filed. *Id.* at \*10. Petitioner's contention that his "mid-trial inquiry about appellate procedure and the steps [taken] when he returned to custody evidenced his desire to perfect an appeal" (Pet. Mem. 12) does not explain his failure to make any inquiry during the nearly seven intervening years. Although the court in *Wims* found that it was reasonable for a petitioner to rely on the assurance of his trial counsel that an appeal would be filed, the petitioner in that case waited only five months before requesting a docket sheet. *Wims*, 225 F.3d at 188.

Because the Court finds that Petitioner did not diligently pursue an appeal during the relevant time period, the Petition is untimely under § 2244(d). Accordingly, this portion of the Report is adopted.

B. Equitable Tolling

Petitioner alternatively asserts that the statute of limitations should be equitably tolled because he acted reasonably in light of Ripps's assurances that he would file an appeal in a timely manner, and that Ripps' failure to do so constituted attorney misconduct. (Obj. 11.)

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Valencia v. United States*, No. 03 Civ. 5346 (KMW), 2007 WL 2111074, at \*4 (S.D.N.Y. July 13, 2007). Attorney misconduct may qualify as an "extraordinary circumstance" if such misconduct falls "far enough outside the range of behavior that

4

reasonably could be expected by a client." *Valencia*, 2007 WL 2111074 at *4 (quoting *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003)).

Petitioner did not diligently pursue his right of appeal during his years as a fugitive. In *Garcia v. United States*, 268 Fed. Appx. 20, 21 (2d Cir. 2008), the court found that a petitioner's failure to discover alleged ineffectiveness of counsel for over a year while he was a fugitive did not excuse his delay in filing because "by failing to surrender . . . [the petitioner] decided to rely not on his lawyer, but on himself." *Id.* Similarly, by absconding prior to the completion of his trial, Petitioner effectively "put himself in a situation where he had to look after himself." *Id.* Because Petitioner appears to have simply turned a blind eye to his appeal for nearly seven years, he cannot now claim that he acted diligently during the period he seeks to toll.

Nor can Petitioner establish that some "extraordinary circumstance" prevented him from perfecting his appeal, as required by the second prong of the equitable tolling standard. An "extraordinary circumstance" may suffice for equitable tolling purposes if there is a "sufficient claim of attorney abandonment" where "a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively represented to her that he had." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 237-38 (3d Cir. 1999).

The record shows that any conversations Petitioner might have had with Ripps about his appeal took place before Petitioner absconded. (App. 114-15.) Furthermore, Petitioner never explicitly instructed Ripps to file an appeal, because, as he argues, Ripps had previously assured him that he would do so, and knew the importance of preserving his client's rights. (*Id.*) Nevertheless, Petitioner did not subsequently contact Ripps to check on the status of his appeal. (*See id.* at 115.) Petitioner failed to make any inquiry prior to his apprehension and does not show how he was prevented from doing so by attorney misconduct. Similar to the petitioner's experience in *Plowden v. Romine*, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999), Petitioner's later success in contacting the Appellate Division and receiving an answer about his appeal "demonstrates the ease with which he could have stayed informed about his case." Although Ripps was suspended from practice in 1997 for neglecting certain client matters, Petitioner's case was not one of those considered during his disciplinary proceeding. (Pet. Mem. 15.) Thus, Petitioner fails to show any causal relationship between Ripps' alleged misconduct and Petitioner's late filing.

Ultimately, the Court finds that Petitioner did not act diligently during the period he seeks to toll, nor did any extraordinary circumstance prevent Petitioner from filing a timely appeal. Thus, the portion of the Report denying equitable tolling is also adopted.

### III. CONCLUSION

For the foregoing reasons, the Report is adopted in its entirety and the Petition is dismissed as untimely. In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, *see* 28 U.S.C. § 2253, and the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. The Clerk of the Court is

respectfully directed to enter judgment in favor of Respondent and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 9, 2010
New York, New York

\*\*\*

Petitioner is represented by Robert S. Dean and Jonathan M. Kirshbaum of Center for Appellate Litigation, 74 Trinity Place, 11th Floor, New York, New York 10006. Respondent is represented by Joshua Magri, Bronx District Attorney Office, 198 East 161st Street, Bronx, New York, 10451.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/10